IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AUTOMATED PRECISION, Inc.

Plaintiff,

v.

TIMOTHY PARE & SANDRA PARE

Defendants.

Civil Action No. 21-1562-GBW

---

Kevin M. Capuzzi, John C. Gentile, BENESCH FRIEDLANDER COPLAN & ARONOFF, Wilmington, Delaware

*Counsel for Plaintiff*

David B. Anthony, Michael William McDermott, BERGER HARRIS, LLP, Wilmington, Delaware; William C. Blasses, James E. DeLine, KERR, RUSSELL AND WEBER, PLC, Detroit, Michigan

*Counsel for Defendants*

**MEMORANDUM OPINION**

September 27, 2022
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Plaintiff Automated Precision, Inc. ("API") filed this action against Defendants Timothy

Pare and Sandra Pare.  D.I. 1 at 1.  API alleges that Defendants breached their stock purchase

agreement with API; that Timothy Pare breached his non-competition agreement with API; and

that Defendants tortiously interfered with API's business relationships.  D.I. 1 ¶¶ 34–35, 41–43,

47–54.  Pending before the Court is Defendants' motion to dismiss for lack of personal

jurisdiction, improper venue, *forum non conveniens*, and failure to state a claim under Federal

Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6).  D.I. 11.  The matter is fully briefed,

and no hearing is required.  For the reasons set forth below, the Court will grant Defendants'

motion as to Counts II and III, but deny the motion as to Count I.

I. **BACKGROUND**[1]

A. **Relationship Between the Parties**

Timothy Pare and Sandra Pare are residents of Ontario, Canada, and the former owners of

Exact Laser Measurements USA, Inc. ("Exact USA") and Exact Laser Measurements, Inc.

("Exact Canada").  D.I. 1 ¶¶ 3–6, 14–15; D.I. 16 at 2, 5.  API, a Maryland corporation, has a

wholly owned Canadian subsidiary, 2694547 Ontario, Inc. ("269").  D.I. 1 ¶¶ 3, 16.  On July 1,

2019, Defendants entered separate stock purchase agreements to sell Exact USA to API (the

"USA SPA") and Exact Canada to 269 (the "Canada SPA").  D.I. 1 ¶¶ 6, 15; D.I. 1-1 at 1.  On

the same date, Timothy Pare and API entered a Non-Competition, Confidentiality, and

---

[1] Under Rule 12(b)(6), the Court must accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff.  *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020).

Inventions Agreement (the "Non-Compete Agreement") as part of API's employment of

Timothy Pare. D.I. 1 ¶ 17; D.I. 1-2 at 1, 8.

Timothy Pare entered an employment agreement with API on June 25, 2019, pursuant to

which Timothy Pare would work out of API's Michigan office (the "Michigan Employment

Agreement"). D.I. 12-1, Ex. 2. The Michigan Employment Agreement was "contingent upon

signing a Non-[C]ompete Agreement prior to employment[.]" D.I. 12-1, Ex. 2 at 2.

### B.  Key Provisions of the Agreements

Section 8.9 of the USA SPA—a covenant not to compete—states, in relevant part, that

> . . . [Defendant]s agrees [sic] that for a period of five (5) years from
> and after the Closing Date (the "***Noncompetition Period***"),
> [Defendants] will not, and will cause their Affiliates not to, directly
> or indirectly, for itself or any other Person, either as principal, agent,
> manager, consultant, partner, owner, investor, employee,
> distributor, dealer, representative, joint venturer, creditor, franchisee
> or otherwise:
>
> > (i)  engage in any business that competes with the
> > Business [i.e., "providing laser tracker measurement
> > services," D.I. 1-1 at 1] as conducted any time prior
> > to the Closing . . . ;
> >
> > (ii)  induce or influence, or attempt to induce or
> > influence, any employee or contractor of [API] or
> > any of its Affiliates . . . to terminate his or her
> > employment or engagement with [API] or such
> > Affiliate or in any way interfere with the relationship
> > between [API] or its Affiliates . . . and any of their
> > employees or contractors; or
> >
> > (iii)  induce or influence, or attempt to induce or
> > influence, any client, customer, supplier, licensee,
> > consultant or other business relation of [API] or any
> > of its Affiliates . . . to cease doing business with
> > [API] or such Affiliate, or in any way interfere with
> > the relationship between [API] or such Affiliate . . .
> > and its clients, customers, suppliers, licensees,
> > consultants or other business relations, whether or
> > not such relation is evidenced by a Contract.

D.I. 1-1 § 8.9.  API's "Affiliates" under the USA SPA include Exact USA and Exact Canada.

*See* D.I. 1-1 at 2 (defining "Affiliate").

Section 12.10 of the USA SPA contains a provision entitled "Consent to Jurisdiction and

Service of Process":

> . . . [T]he parties hereby submit to the exclusive jurisdiction of the
> courts of New Castle County, Delaware or the courts of the United
> States located in New Castle County in the State of Delaware in
> respect of the interpretation and enforcement of the provisions of
> this Agreement and the Ancillary Agreements and hereby waive,
> and agree not to assert, any defense in any action, suit or proceeding
> for the interpretation or enforcement of this Agreement and any
> Ancillary Agreement, that they are not subject thereto or that such
> action, suit or proceeding may not be brought or is not maintainable
> in such courts . . . , that the suit, action or proceeding is brought in
> an inconvenient forum or that the venue of the suit, action or
> proceeding is improper. . . .

D.I. 1-1 § 12.10.  And the USA SPA defines "Ancillary Agreements" to include

> each other agreement, document, instrument or certificate
> contemplated by this Agreement or to be executed by [API] or
> [Defendants] in connection with the consummation of the
> transactions contemplated by this Agreement, in each case, only as
> applicable to the relevant party or parties to such Ancillary
> Agreement, as indicated by the context in which such term is used.

D.I. 1-1 at 2.  The Canada SPA contains a mirror provision, but it provides for "exclusive

jurisdiction of the courts of Ontario . . . ."  D.I. 12-1, Ex. 7 § 12.10.

Finally, Paragraph 3 of the Non-Compete Agreement prohibits Timothy Pare—during the

life of the Agreement and for two years thereafter—from taking away or attempting to take away

"the business or patronage of [API]'s current, or prospective clients, customers or accounts" and

from soliciting, hiring, or recruiting "any employee or independent contractor of [API] . . . ."

D.I. 1-2 ¶ 3(b).  The Non-Compete Agreement also contains a jurisdiction provision:

> This Agreement shall be governed by and construed in accordance
> with the laws of the State of Maryland, without regard to conflicts

3

of laws principles, and for any action arising out of or relating to this
Agreement, exclusive jurisdiction shall exist in the state or federal
courts of Maryland or the state in which [Timothy Pare] resides.

D.I. 1-2 ¶ 14. The Non-Compete Agreement does not appear to make any reference to the USA

SPA, *see* D.I. 1-2, and, while the USA SPA contains a non-competition provision, it does not

reference the Non-Compete Agreement, *see* D.I. 1-1.

### C. Defendants' Conduct

Six paragraphs of API's Complaint provide the factual allegations that support the breach

of contract and tortious interference claims against Defendants:

19. Timothy [Pare] and/or Sandra Pare were, or became owners or
part owners of CMF Group, Inc. [(CMF)], a long-time customer of
[Exact USA and Exact Canada].  Timothy Pare failed to disclose
that conflict of interest to API . . . .

20. . . . Defendants induced or influenced, or attempted to induce or
influence, CMF to cease doing business with API and induced or
influenced, or attempted to induce or influence, CMF to instead do
business with an entity . . . owned and/or controlled by Defendants'
son and former employee of API, Tyler Pare [known as E.L.M., Inc.
("ELM")].  [ELM] shares an address with CMF, and is now owned
or partly owned by Defendants, in both Windsor, Ontario, and in
Madison Heights, Michigan.

21. Also, shortly after leaving the employ of API, Defendant
Timothy Pare . . . acted as a consultant and/or independent
contractor for Comau, Inc. [("Comau")] and induced or influenced,
or attempted to induce or influence, Comau from doing business
with API and induced or influenced, or attempted to induce or
influence, Comau to instead do business with [ELM].  Timothy Pare
was witnessed instructing and directing Comau subcontractors at the
General Motors Oshawa, Ontario assembly plant.

22. As a result, Defendants willfully and materially breached the
[USA SPA] by inducing or influencing, or attempting to induce or
influence, clients, customers, suppliers, licensees, consultants or
other business relations of API and/or [Exact USA and/or Exact
Canada] from doing business with API, and by interfering with the
relationship between, API and their clients, customers, suppliers,

licensees, consultants or other business relations, in violation of
§ 8.9(a)(iii) of the [USA SPA].

. . .

25. Defendants also willfully and materially breached the [USA
SPA] by inducing or influencing, or attempting to induce or
influence, employees of API [to] terminate their employment with
API and otherwise interfered with the relationship between Plaintiff
API and their employees in violation of §8.9(a)(ii) of the [USA
SPA].

26. Specifically, Defendants willfully and materially breached the
[USA SPA] by failing to effectively manage the employees of Exact
USA who were retained by API following the purchase of Exact
USA by API and by failing to encourage such employees to execute
the employment benefits package provided by API and/or non-
compete agreements creating mistrust between such employees and
[API] causing a majority of those employees to resign their
employment with by [sic] API.

D.I. 1 ¶¶ 19–26.

API argues that it does not allege any claims under the Michigan Employment
Agreement or the Canada SPA in this lawsuit. D.I. 16 at 5. Rather, API only brings claims for
breach of the Non-Compete Agreement and of the USA SPA. API alleges in Count I that
"Defendants willfully and materially breached the terms of the [USA SPA]" by violating Section
8.9 thereof. D.I. 1 ¶¶ 34–35. In Count II, API alleges that "Timothy Pare willfully and
materially breached the Non-Compete Agreement . . . ." D.I. ¶¶ 41–43. In Count III, API
alleges that Defendants intentionally and tortiously interfered with "existing and prospective
business relationships" between API and its customers. D.I. ¶¶ 49–50. For each count, API
requests both injunctive and monetary relief.

**D. Other Litigation Between the Parties**

Before API filed the instant litigation, Defendants filed two lawsuits against API.
Defendants state that the first suit, filed in the Ontario Superior Court of Justice on February 26,

2021, alleged that API, 269, Exact Canada, Exact USA, and several API corporate officers breached the Canada SPA and the Michigan Employment Agreement on various grounds. D.I. 12 at 4. Defendants state that the second suit, filed in Michigan state court on March 25, 2021, alleged that the same defendants breached the USA SPA, the Canada SPA, and the Michigan Employment Agreement on similar grounds. D.I. 12 at 4–5. According to API, the Michigan court "dismissed all claims against the corporate defendants due to the Ontario exclusive jurisdiction clause in the [Canada] SPA." D.I. 16 at 5–6 (footnote omitted). API adds that both lawsuits raised certain related tort claims and that none of the allegations in either lawsuit "relate to the contracts at issue in this lawsuit (*i.e.*, the [] USA SPA or [the] Non-Compete Agreement)." D.I. 16 at 6. However, API does not otherwise contest Defendants' summary of the lawsuits.

## II. LEGAL STANDARDS

Defendants move to dismiss for lack of personal jurisdiction, improper venue, *forum non conveniens*, and failure to state a claim on which relief can be granted under Rules 12(b)(2), 12(b)(3), and 12(b)(6).

### A. Lack of Personal Jurisdiction

Unless a federal statute provides otherwise, a federal court has jurisdiction over a party only if the defendant is subject to the jurisdiction of the state in which the district court sits. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 382 (3d Cir. 2022). Jurisdiction must comport with the state's long-arm statute and with the Fourteenth Amendment to the Constitution. *Id*. at 382– 83. Therefore, if the district court lacks general jurisdiction over the defendants, "personal jurisdiction only reaches claims that arise out of or relate to the minimum contacts a plaintiff can demonstrate between the defendant and the forum state." *Id*. at 383. For that reason, courts "generally evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *see Scott v. Lackey*, 587 F. App'x 712, 717 n.9 (3d Cir. 2014); 4A

6

Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, Federal Practice and Procedure §
1069.7 (4th ed., 2002) ("[A] plaintiff also must secure personal jurisdiction over a defendant
with respect to each claim she asserts.").

"The right to move for dismissal for lack of personal jurisdiction…is not unlimited . . . .
[It] can be affirmatively and implicitly waived through conduct." *In re Asbestos Prods. Liab.
Litig. (No. VI)*, 921 F.3d 98, 104–105 (3d Cir. 2019) (citations omitted). "For example,
particularly in the commercial context, parties frequently stipulate in advance to submit their
controversies for resolution within a particular jurisdiction. Where such forum-selection
provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable
and unjust,' their enforcement does not offend due process." *Burger King Corp. v. Rudzewicz*,
471 U.S. 462, 472 n.14 (1985) (citations omitted).

### B.  Improper Venue

"Venue fundamentally refers to locality, the place where a lawsuit should be heard. . . .
[V]enue 'is primarily a matter of choosing a convenient forum,'" so "parties can agree to venue
among themselves," such as via a forum selection clause. *Wall St. Aubrey Golf, LLC v. Aubrey*,
189 F. App'x 82, 87 (3d Cir. 2006) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 305
(2006)) (cleaned up). The remedy for improper venue is dismissal or transfer "to any district or
division in which [the case] could have been brought." 28 U.S.C. § 1406(a).

### C.  *Forum Non Conveniens*

Federal courts may dismiss a case under the doctrine of *forum non conveniens* "even if
jurisdiction and proper venue are established" based either on "oppressiveness and vexation to a
defendant" or on "the court's own administrative and legal problems . . . ." *Am. Dredging Co. v.
Miller*, 510 U.S. 443, 447–48 (1994) (internal quotation marks and citations omitted). The

doctrine generally applies only when the alternative forum that can hear a case is in a foreign country. *Sinochem Int'l, Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)

A valid and applicable forum selection clause alters the typical *forum non conveniens* analysis: "a plaintiff's choice of forum in filing his or her lawsuit 'merits no weight,' and [the Court is] not to consider any arguments about the parties' private interests—those 'weigh entirely in favor of the preselected . . . forum.'" *Collins On behalf of herself v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3d Cir. 2017) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63–64 (2013)). As a result, the district court should only consider whether an adequate alternative forum exists and the "relevant public interest factors affecting the convenience of the forum." *Id.* (internal quotation marks and citations omitted). Those considerations "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Id.* (quoting *Atl. Marine Const.*, 571 U.S. at 62, 64).

**D. Failure to State a Claim**

To state a claim on which relief can be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Such a claim must plausibly suggest "facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer & Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). However, the Court will "'disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements.'" *Princeton Univ.*, 30 F.4th at 342 (citation omitted).

8

"'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Pinnavaia v. Celotex Asbestos Settlement Tr.*, 271 F. Supp. 3d 705, 708 (D. Del. 2017) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997)), aff'd, 2018 WL 11446482 (3d Cir. Apr. 6, 2018). "A motion to dismiss 'may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.'" *McCrone v. Acme Markets*, 561 F. App'x 169, 172 (3d Cir. 2014) (quoting *Burlington Coat Factory*, 114 F.3d at 1420).

## III.  DISCUSSION

As discussed in more detail below, the Court lacks personal jurisdiction over Defendants as to API's claim for breach of the Non-Compete Agreement (Count II). API fails to plead a tortious interference claim (Count III) for which relief can be granted. However, API may proceed against Defendants in this forum on its claim for breach of the USA SPA (Count I).

### A.  Count I: Breach of the USA SPA

The Court finds that it has personal jurisdiction over the Defendants and that venue is proper as to Count I. This case should not be dismissed in favor of an Ontario, Canada forum, and API states a claim on which relief can be granted.

#### i.  Personal Jurisdiction

The parties agree that this Court may exercise personal jurisdiction over Defendants only if the USA SPA's forum selection clause established their consent to jurisdiction. D.I. 12 at 14–15; D.I. 16 at 6–9. However, Defendants argue that the Canada SPA's forum selection clause applies to claims for breach of the USA SPA, since the USA SPA's "Background" section refers to the Canada SPA. D.I. 12 at 11–14. API argues that the USA SPA's forum selection clause

9

applies to claims for breach of the USA SPA and of the Non-Compete Agreement, since the Non-Compete Agreement is ancillary to the USA SPA. D.I. 16 at 7–8.

Federal law governs the enforceability of a forum selection clause in federal court. *Collins*, 874 F.3d at 181 & n.3. The party that seeks the clause's enforcement must establish that the claims and parties in the suit are "subject to the forum-selection clause." *See Brit. Telecommunications PLC v. Fortinet Inc.*, 424 F. Supp. 3d 362, 368 (D. Del. 2019) (citing *Altvater Gessler-J.A. Baczewski Int'l (USA), Inc. v. Sobieksi Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009)). "Federal law presumes forum selection clauses to be valid" unless the forum is "so gravely difficult and inconvenient that the resisting party will for all practical purposes be deprived of his day in court, or the clause was procured through fraud or overreaching." *MacDonald v. CashCall, Inc*, 883 F.3d 220, 232 n.14 (3d Cir. 2018) (cleaned up). The clause must be "freely negotiated" and "not unreasonable and unjust." *Rudzewicz*, 471 U.S. at 472 n.14 (1985) (internal quotation marks and citations omitted). Defendants argue that efficiency favors dismissal and that "[m]aintaining this action will necessitate significant out-of-state travel for all parties and witnesses." D.I. 12 at 15–16. However Defendants provide no indication of fraud, overreaching, "grave[]" inconvenience, unreasonableness, or injustice. Thus, the USA SPA's forum selection clause is valid and enforceable.

Therefore, if the USA SPA's forum selection clause applies to API's breach of contract claim, Defendants have waived an objection to personal jurisdiction in this Court. *See* D.I. 1-1 § 12.10. State law "determine[s] the scope of a forum selection clause—that is, whether the claims and parties involved in the suit are subject to the clause." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018) (cleaned up). *But see id.* at 58–59 (applying federal law due to party agreement).

This Court, when sitting in diversity, applies Delaware choice-of-law rules to determine which state's law to apply, "even where the contract contains a choice-of-law clause." *Collins*, 874 F.3d at 183 (citation omitted). "[Delaware] court[s] will interpret [a] forum selection clause in accordance with the law chosen to govern the contract." *Germaninvestments AG v. Allomet Corp.*, 225 A.3d 316, 331 (Del. 2020) (internal quotation marks and citations omitted). Here, the USA SPA points to Delaware law. D.I. 1-1 § 12.8. Delaware courts seek to "determin[e] the intent of the parties from the language of the contract" and construe contracts as they "would be understood by an objective, reasonable third party." *Cox Commc'ns, Inc. v. T-Mobile US, Inc.*, 273 A.3d 752, 760 (Del. 2022) (internal quotation marks and citations omitted).[2]

---

[2] The parties' choice of law will control an agreement "unless the chosen state lacks a substantial relationship to the parties or transaction or [if] applying the law of the chosen state will offend a fundamental policy of a state with a material greater interest." *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 342 (Del. 2013) (internal quotation marks and citation omitted). However, where Delaware law would accord with that of the alternative jurisdiction, "the Court should avoid the choice-of-law analysis altogether." *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010) (internal quotation marks and citations omitted); *see also Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 n.45 (Del. 2017) (same). Absent a choice-of-law provision, Delaware courts determine the governing law via the "most significant relationship" test. *SIGA Techs.*, 67 A.3d at 341–42. Here, balancing that test's five factors—"(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties[,]" *Chemtura*, 160 A.3d at 465—points to Michigan law. The record does not reveal where the USA SPA was negotiated or signed. The purpose of the USA SPA was to acquire Exact USA, a Michigan corporation, and API has a Michigan office. *See* D.I. 1-1 at 1, § 5.1(a); D.I. 12 at 3. The Pares reside in Canada, and API's domicile is Maryland. D.I. 1 ¶¶ 3–4. Thus, Michigan law is most likely to apply. Like Delaware courts, Michigan courts give "unambiguous" terms their "plain meaning" and seek to "ascertain the intention of the parties." *Shay v. Aldrich*, 487 Mich. 648, 660 (2010) (citations and internal quotations omitted). And, like Delaware, Michigan courts apply their general rules for contract interpretation to the interpretation of forum selection clauses. *Barshaw v. Allegheny Performance Plastics, LLC*, 965 N.W.2d 729, 733–34 (Mich. App. 2020). Delaware and Michigan law have no conflict relevant to interpretation of the USA SPA's forum selection clause, so the Court will apply Delaware law in the absence of a conflict.

The USA SPA's forum selection clause provides that "the parties hereby submit to the exclusive jurisdiction of [Delaware state and federal courts] in respect of the interpretation and enforcement of the provisions of this Agreement and the Ancillary Agreements. . . ." D.I. 1-1 § 12.10. Thus, that forum selection clause applies to a claim for breach of the USA SPA.

However, Defendants argue that the Canada SPA's mirroring forum selection clause also applies to the USA SPA because the USA SPA "was expressly intended to be executed in connection with the transactions contemplated by the [Canada SPA]." D.I. 12 at 12–13. An "Ancillary Agreement[]" is one executed "in connection with the consummation of the transactions contemplated by this Agreement . . . ." D.I. 12-1, Ex. 7 § 1. The USA SPA recites that Defendants and 269 will enter the Canada SPA "[s]imultaneously" with the USA SPA, D.I. 1-1 at 1, and the Canada SPA contains a mirroring provision, D.I. 12-1, Ex. 7 at 1. However, the mirroring agreements and use of "simultaneously" suggests that the parties intended the separate agreements to work in parallel. Thus, the Canada SPA's provisions do not apply to the USA SPA. Defendants have waived objection to lack of personal jurisdiction in Delaware as to claims that fall under the USA SPA's forum selection clause, such as a claim for breach of Section 8.9 of the USA SPA. Thus, the Court has personal jurisdiction over Defendants as to Count I.

### ii. Venue

Venue in Delaware is proper for Count I. Defendants contend venue is improper, D.I. 12 at 16, but API disagrees and points to Defendants' consent to venue in this Court in the USA SPA, D.I. 16 at 9. "[P]arties can agree to venue among themselves . . . ." *Wall St. Aubrey Golf*, 189 F. App'x at 85, 87; *see also Mack v. Rev Worldwide, Inc.*, 2020 WL 7774604, at *6 (Del. Ch. Dec. 30, 2020) (holding that courts should honor a valid forum selection clause). The USA SPA's forum selection clause extends to Count I, *see* Section III.A.i., *supra*, and provides that "the parties hereby submit to the exclusive jurisdiction of the courts of New Castle County,

12

Delaware or the courts of the United States located in New Castle County" and that the parties "hereby waive . . . any defense . . . that the venue of the suit . . . is improper." D.I. 1-1 § 12.10. The plain meaning of this clause is that Defendants and API consent to venue in this Court, a United States Court located in New Castle County, Delaware. Therefore, the Court will deny Defendants' motion to dismiss Count I for improper venue.

### iii.   *Forum Non Conveniens*

Defendants next argue that, even if the Court has personal jurisdiction and even if venue is proper, the Court should dismiss this case because Delaware is an inconvenient forum. Defendants argue that the parties have agreed to Ontario, Canada as the proper alternative forum to adjudicate their disputes. D.I. 12 at 18. API argues that the USA SPA requires that it bring this case in Delaware. D.I. 16 at 10.

On a motion to dismiss for *forum non conveniens* where the parties' contract contains a valid forum selection clause, the district court should only consider whether an adequate alternative forum exists and the "relevant public interest factors affecting the convenience of the forum." *Collins*, 874 F.3d at 186 (internal quotation marks and citations omitted). Those considerations "will overcome a forum selection clause in only the most 'unusual' and 'extraordinary' circumstances." *Id.* (quoting *Atl. Marine Const.*, 571 U.S. at 62, 64).

First, the forum selection clause applies to Count I. *See* Section III.A.i., *supra*. Next, Defendants identify Ontario—the forum that the Canada SPA selects—as an adequate alternative forum. D.I. 12 at 18. The Court will assume without deciding that Ontario is an adequate alternative forum. *See* D.I. 16 at 10 (arguing that API may not file its claims in Ontario).

Third, the Court finds that the public interest factors do not support transfer. API asserts that the public interest factors do not favor Defendants. D.I. 16 at 10. Defendants argue that this case "presents [an] exceptional circumstance" and that

13

> [n]one of the witnesses, evidence, parties, or counsel are located in
> Delaware. None of the third parties could be compelled to attend
> via subpoena. The parties have no relationship to Delaware, and
> Delaware has no interest in these proceedings. Trial counsel for the
> parties are located in Michigan and Ohio. Trial would be
> significantly more expensive in Delaware given the necessity of
> travel for all witnesses and counsel, and the necessity of retaining
> Delaware counsel.

D.I. 12 at 18. The Third Circuit noted that the relevant public interest factors

> "may include [1] the administrative difficulties flowing from court
> congestion; [2] the local interest in having localized controversies
> decided at home; and [3] the interest in having the trial of a diversity
> case in a forum that is at home with the law."

*Collins*, 874 F.3d at 186–87 n.9 (cleaned up) (quoting *Atl. Marine Const.*, 571 U.S. at 62 n.6). In

the related context of a § 1404(a) transfer motion, *see Atl. Marine Const.*, 571 U.S. at 60 (finding

§ 1404(a) codified *forum non conveniens* in some cases), the Third Circuit also examines "'the

enforceability of the judgment'" and "'the public policies of the fora.'" *In re: Howmedica*

*Osteonics Corp*, 867 F.3d 390, 401–02 (3d Cir. 2017) (quoting *Jumara v. State Farm Ins. Co.*, 55

F.3d 873, 879–80 (3d Cir. 1995)). This open-ended list of public interest factors permits the

Court to consider other issues that the parties raise. Defendants raise burdening citizens in an

unrelated forum with jury duty, D.I. 16 at 10 (quoting *Collins*, 874 F.3d at 186–87 n.9), and API

raises the risk of conflicting interpretations of the same contract, D.I. 12 at 18.

To the extent that Defendants raise "'practical problems that make trial of a case easy,

expeditious and inexpensive,'" *Howmedica Osteonics*, 867 F.3d at 402 (quoting *Atl. Marine*, 571

U.S. at 62 n.6), such as travel for and the cost of trial, the Court will not consider them because

Defendants "waive[d] the[ir] right to challenge the preselected forum as inconvenient[,]" *Atl.*

*Marine*, 571 U.S. at 64. Delaware lacks a local interest in the outcome of this dispute; a

proceeding here risks burdening a local jury; and consolidated litigation in Ontario may avoid

conflicting rulings. However, the Court's familiarity with Delaware law—relative to a judge in Ontario—weighs against dismissal for *forum non conveniens*. Neither API nor Defendants contest the enforceability of the judgment in, raise policies of, or raise concerns about congestion in Delaware or Ontario. On balance, these public interest factors weigh against dismissal. Moreover, even combined with the assumed availability of an alternative forum, Defendants fail to show "unusual and extraordinary circumstances" that "will overcome a forum selection clause . . . ." *Collins*, 874 F.3d at 186 (internal quotation marks and citation omitted). Therefore, the Court will deny Defendants' motion to dismiss Count I for *forum non conveniens*.

### iv. *Failure to State a Claim*

The Court next turns to Defendants' arguments on the merits. Defendants argue that most of API's allegations are mere conclusory statements and that its few factual allegations are insufficient to state a claim for breach of contract (Count I). D.I. 12 at 9–11. API alleges that Defendants breached Section 8.9 of the USA SPA because Defendants (i) interfered with the business relationships between API and CMF and between API and Comau and (ii) induced API employees to terminate their employment relationship with API. D.I. 16 at 12.

Many of the Complaint's allegations are mere "recitals" of the text of Section 8.9 of the USA SPA, and the Court will "'disregard'" them. *Princeton Univ.*, 30 F.4th at 342 (citation omitted). However, some of API's factual allegations support the plausibility of its claims. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz*, 991 F.3d at 462 (quoting *Iqbal*, 556 U.S. at 678). Count I alleges breach of Section 8.9 of the USA SPA. That Section, in relevant part, prohibits Defendants from inducing or influencing "any [API] employee or contractor" "to terminate his or her employment or engagement with [API]" or from inducing or influencing an API customer "to cease doing business with [API] . . . ." D.I.

15

1-1 § 8.9(a). The USA SPA generally extends these protections to API's subsidiaries, and those subsidiaries include Exact USA and Exact Canada. D.I. 1-1 at 2; D.I. 1-1 § 8.9(a).

The Complaint alleges that Defendants became owners of longtime Exact client CMF, D.I. 1 ¶ 19, and that Defendants induced or influenced CMF to do business with ELM—an entity that Defendants' son, Tyler Pare, owns—instead of with Exact USA or Exact Canada, D.I. 1 ¶ 20. Those allegations support a plausible inference that Defendants induced an API customer to cease doing business with API's Exact subsidiaries, in violation of Section 8.9(a)(iii). The Complaint further alleges that Timothy Pare became a consultant for Comau and induced or influenced Comau to do business with ELM. D.I. 1 ¶ 21. The Complaint alleges no facts suggesting that Comau had any relationship with Exact USA, Exact Canada, or API. D.I. 1 ¶ 21. Section 8.9(a)(iii) restricts Defendants' conduct only with respect to "any client, customer, supplier, licensee, consultant or other business relation of [API] or any of its Affiliates . . . ." D.I. 1-1 § 8.9(a)(iii). Therefore, API's allegations related to Comau do not support a plausible allegation that API breached Section 8.9 of the USA SPA.

Further, the Complaint alleges that "Defendants . . . fail[ed] to effectively manage the employees of Exact USA who were retained by API . . . and [] fail[ed] to encourage such employees to execute the employment benefits package provided by API and/or non-compete agreements creating mistrust between such employees and [API]" and "causing a majority of those employees to resign their employment with [] API." D.I. 1 ¶ 26. These allegations support a plausible inference that Defendants influenced certain Exact employees to cease their employment relationships with API in violation of Section 8.9(a)(ii). D.I. 1 ¶ 26. Thus, two of API's factual allegations are sufficient to plausibly support violations of Section 8.9 of the USA SPA. The Court will deny Defendants' motion to dismiss Count I.

### B. Count II: Breach of the Non-Compete Agreement

The Court finds that it lacks personal jurisdiction over the Defendants as to Count II. API contends that the USA SPA's forum selection clause applies to claims for breach of the Non-Compete Agreement because the Non-Compete Agreement is ancillary to the USA SPA. D.I. 16 at 7–8. Defendants argue that the Non-Compete Agreement's forum selection clause—or the Canada SPA's forum selection clause—applies to claims for breach of the Non-Compete Agreement. D.I. 12 at 11–14.

The Court has already found that the USA SPA's forum selection clause is valid and enforceable, *see* Section III.A.i., *supra*, so the Court must again consider the clause's scope. The Court, again, *see* Section III.A.i., *supra*, evaluates the scope of the USA SPA's forum selection clause under Delaware law, *McGraw-Hill Glob. Educ. Holdings*, 909 F.3d at 58; *Fla. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066, 1080 (Del. Ch. 2021) (interpreting a forum selection clause under Delaware law in a contract governed by Delaware law). Delaware courts seek to "determin[e] the intent of the parties from the language of the contract" and construe contracts as they "would be understood by an objective, reasonable third party." *Cox Commc'ns*, 273 A.3d at 760 (internal quotation marks and citations omitted). The USA SPA's forum selection clause extends to "the interpretation and enforcement of the provisions of . . . the Ancillary Agreements . . . ." D.I. 1-1 § 12.10. The Ancillary Agreements include "each other agreement, document, instrument or certificate contemplated by [the USA SPA] or to be executed by [API] or [Defendants] in connection with the consummation of the transactions contemplated by [the USA SPA] . . . ." D.I. 1-1 at 2. Thus, Delaware state and federal courts have "exclusive jurisdiction" over the interpretation or enforcement of an agreement "contemplated by" or executed "in connection with" the USA SPA.

17

The parties agree that there is no basis for personal jurisdiction outside of the USA SPA's forum selection clause. D.I. 12 at 14–15; D.I. 16 at 6–9. That clause does not reach a claim for breach of the Non-Compete Agreement. API's conclusory allegation that "[t]he Non-Compete Agreement is an 'ancillary agreement'" under the USA SPA, D.I. 1 ¶ 18, is insufficient to sustain personal jurisdiction. Rather, Defendants must plead facts that plausibly show that the Non-Compete Agreement is "contemplated by" or executed "in connection with" the USA SPA. The parties fail to cite—and the Court cannot otherwise find—any mention of the Non-Compete Agreement in the USA SPA or any reference to the USA SPA in the Non-Compete Agreement. Instead, the Non-Compete Agreement has its own forum selection clause that looks to Maryland courts. D.I. 1-2 at ¶ 14. Thus, the Court will dismiss Count II for lack of personal jurisdiction.

### C. Count III: Tortious Interference with Contract and With Prospective Business Relations

Count III raises two separate claims: tortious interference with contract and tortious interference with prospective business relations. D.I. 16 at 14. The Court finds that API has failed to state a claim for which the Court can grant relief as to both claims. Defendants argue that the few factual allegations that API advances (beyond mere conclusory statements) are insufficient to state a claim for tortious interference. D.I. 12 at 10–11. API argues that its allegations as to CMF and Comau were sufficient to state a plausible claim for tortious interference with contract and with prospective business relations. D.I. 16 at 14–15.

Many of the Complaint's allegations are mere "recitals" of the elements of a claim for tortious interference with contract or with prospective business relations, and the Court will "'disregard'" such allegations. *Princeton Univ.*, 30 F.4th at 342 (citation omitted). The Court will dismiss a claim unless it is plausible. *Id.* at 342. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

18

defendant is liable for the misconduct alleged.'" *Klotz*, 991 F.3d at 462 (quoting *Iqbal*, 556 U.S. at 678).

First, the Court will grant Defendants' motion to dismiss API's claim for tortious interference with contract. The Court, as explained above, only has jurisdiction over Defendants if API's claims fall within the scope of the USA SPA's forum selection clause, *see* Section III.A.i., *supra*, and the USA SPA selects Delaware law, D.I. 1-1 § 12.8. Under Delaware law, Defendants must have interfered with "'a contract'" to state a claim for tortious interference with contract. *O'Gara v. Coleman*, 2020 WL 752070, at *9 (Del. Ch. Feb. 14, 2020) (quoting *Bhole, Inc. v. Shore Invs., Inc.*, 67 A.3d 444, 453 (Del. 2013)) (some quotation marks omitted). API's two paragraphs of allegations about CMF, D.I. 1 ¶¶ 19–20, and one paragraph of allegations about Comau, D.I. 1 ¶ 21, fail to allege that either CMF or Comau had a current contract with API with which Defendants interfered. *See* D.I. 1 ¶ 19 (alleging Timothy Pare "entered into a contract on behalf of API with CMF"). Thus, API fails to plausibly allege tortious interference with contract under Delaware law.

Second, the Court will grant Defendants' motion to dismiss API's claims for tortious interference with prospective business relations. Defendants argue that API may not "maintain a tortious interference claim based on an alleged breach of the [USA SPA] . . . ." D.I. 17 at 3. To state an actionable claim for tortious interference with prospective business relations, the plaintiff must allege "wrongful" conduct. *See Agilent Techs., Inc. v. Kirkland*, 2009 WL 119865, at *8 (Del. Ch. Jan. 20, 2009). However, if the plaintiff alleges that the wrong committed was breach of contract, courts must also consider the economic loss doctrine. "[T]he economic loss doctrine . . . is a judicially created doctrine that allows a party to recover in tort only if losses are accompanied by bodily harm or property damages and not for losses that are solely economic in

19

nature." *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 459 (D. Del. 2013)

(cleaned up). The economic loss doctrine will not bar a tortious interference claim "'[i]f the

claimed duty is independent from the duties imposed by the contract . . . .'" *Aureus Holdings,*

*LLC v. Kubient, Inc.*, 2021 WL 3465050, at \*7 (Del. Super. Ct. Aug. 6, 2021) (quoting *R.*

*Keating & Sons, Inc. v. Chiselcreek Dev., LLC*, 2020 WL 6390676, at \*6 (Del. Super. Ct. Oct.

30, 2020)). In other words, a plaintiff cannot recover for tortious interference with prospective

business relations if the defendant's only alleged "wrong" was breach of the defendant's contract

with the plaintiff.

Here, API alleges only that its claims for tortious interference with prospective business

relations arise from "the acts alleged herein." D.I. 1 ¶ 49. The only applicable business

relationships API discusses in its Complaint are those with CMF and with Comau. D.I. 1 ¶¶ 19–

21; D.I. 16 at 14 (citing D.I. 1 ¶¶ 20–21). API appears to allege that Defendants' acts were

wrongful because Defendants induced CMF and Comau to "do business with" ELM, which

Defendants' son controlled, instead of with API. D.I. 1 ¶¶ 19–21. The Court sees no reason

why, in the abstract, it is wrongful to encourage a company to do business with a person's family

member. *See generally* Restatement (Second) of Torts § 767 & cmt. *f* (1979) (determining

"improper" conduct based on, e.g., the actor's economic interests, social interests, and the

relations between the parties); *Agilent Techs.*, 2009 WL 119865, at \*8 n.39 (citing Restatement

(Second) of Torts § 767). Here, the action is wrongful only because Defendants had a duty

under the USA SPA not to steer business away from API. D.I. 1-1 § 8.9(a)(iii). Since API's

breach of contract claim arises from Defendants' violation of this same duty, the Court finds that

the action for tortious interference is based on Defendants' breach of the USA SPA. Therefore,

the economic loss doctrine bars API's tortious interference with prospective business relations claim. The Court will dismiss Count III pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss (D.I. 11) is granted in part and denied in part. API's claim for breach of the Non-Compete Agreement (Count II) is dismissed for lack of personal jurisdiction and API's claims for tortious interference with contract and with prospective business relations (Count III) are dismissed for failure to state a claim. The Court dismisses Count III without prejudice since Defendants make no argument that amendment of the Complaint would be "inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004); *see* D.I. 17 at 5 (demanding that Count III be dismissed "with prejudice"). API's claim for breach of Section 8.9 of the USA SPA (Count I) may proceed on the grounds that (1) Defendants induced or influenced CMF to cease doing business with API and to do business, instead, with ELM and that (2) Defendants' failure to encourage certain API employees to sign benefits and non-competition agreements with API influenced those employees to terminate their employment with API.

The Court will issue an order consistent with this Memorandum Opinion.

21